Kinkead, J.
(sitting at Warren).
'This is an action by plaintiff, an infant seven years old, by next friend, for personal injury.
Plaintiff’s father leased a farm from defendant and was occupying the same with his infant son and his family at the time of injury to plaintiff. The premises were out of repair when leased; that is, the barn doors upon the barn thereon leading into the cow stable were out of repair; the doors were hung on rollers which ran upon tracks, so that they were pushed back and forth upon the rollers when being opened and closed; these rollers were both out of repair prior and subsequent to the time plaintiff’s father took possession. They were broken so that the doors could not be operated upon the tracks. In using them, the doors had to be lifted and placed against the side of the barn in order to open them. In closing them they had to be lifted back into place and supported in position; they could not be otherwise opened or closed.
Prior to making the lease, and to induce the father of plaintiff to take the premises, defendant promised and agreed to place the doors, rollers and track in good repair. Defendant also promised and agreed to make such repairs after the lease was made-. Defendant reserved the right in the lease in writing to enter upon the premises to make the repairs.
Up to the 6th day of May, 1915, defendant had failed, neglected and refused to make the repairs and to put the barn doors in a reasonably safe condition for use; on that date some one attached a rope about the neck of a calf and tied the other end of the rope into a ring fastened to the barn sill. The rope was six or eight feet long. The ring to which the rope was attached was near to one of the doors which had then been *43 opened and placed back against the side of the barn, leaning against it.
The calf having gotten its leg entangled in the rope, plaintiff was seeking to free it from its entanglement, and in doing so in some manner the barn door was pulled over, and fell upon the plaintiff. His left leg was broken.
Plaintiff claims that his injuries are wholly due to the carelessness and negligence of defendant in suffering and permitting the nuisance arising from carelessly and negligently failing to put the door in repair and in a reasonably safe condition, and asks damages in the sum of $5,000.
Where property is out of repair and in ruinous condition, and at the time of leasing, as well as after possession taken by the lessee, the lessor promises to repair and injury occurs to a child of the tenant from the failure to repair, the lessor is liable therefor. (Shindelbeck v. Moon, 32 O. S., 264, 267.)
The facts stated in the petition present in novel form the question of proximate and remote cause. Being thus raised on demurrer it devolves upon the court to decide upon the admitted facts whether the proximate cause of injury to the hoy was probably the neglect of defendant’s obligation to repair the barn door, or whether the act of the one who tied the calf to the ring on the barn sill was an intervening cause, which should have been foreseen by the lessor as likely to have occurred in the natural and ordinary course of things; or whether such intervening cause could not have probably been foreseen and hence could not have been considered as a natural and ordinary result 'of the act or omission complained of. In other words, when the premises were leased to plaintiff’s father, in the light of existing circumstances with the barn doors leading to the cow barn out of repair and the natural and probable uses of the barn, should defendant have foreseen that such an intervening cause as a calf being tied to the sill of the barn and becoming entangled in the rope, and while a small boy is undertaking to release the calf the barn doors are in some way pulled down in the melee because of their defective condition, thus injuring the boy?
*44 Judicial expression concerning the relative function of judge and jury is not always clear and explicit.
'There is a sort of halo about the common type of statement that the question of negligence or of proximate cause is under the circumstances one for the jury. In the present age of judicial progressive enlightenment and regard for the rights of persons, the predominant thought seems to be that the final conjecture or guess is within the province of the jury rather than of the judge.
The rule that where the facts are undisputed, and there can be but one rational, sensible conclusion, it is a question of law for the court, frequently must give way to the doctrine that the question of negligence, of contributory negligence, and of proximate cause, is under the circumstances one for the jury.
The mental attitude and perception of the judicial mind when instructing a jury concerning the law applicable to the different phases of the evidence and claims of parties must be fully comprehended.
All judges called upon to decide legal questions arising in a law suit must put themselves in the position of a trial judge.
Disputed facts or facts concerning which different minds may disagree only come within the exclusive province of the jury. When the facts and circumstances, though not in dispute, are of such character or nature that reasonable minds might arrive at different conclusions, then the question is one for the jury.
But the statement that the question of negligence, contributory negligence and proximate cause is under the circumstances one for the jury, does not fully state the rule. It does not furnish adequate guide for trial courts. It is not in fact a statement of any rule of law.
So it is expressionless to say that the question of proximate cause is ordinarily for the jury. 29 Cye., 639. Likewise, it is inappropriate to say that where the negligence of two parties has contributed to an injury, it is a question for the jury to say whether the negligence of one or of the other was the proximate cause of the injury. 29 Cyc., 640.
The determination of the proximate cause as between two acts of concurring negligence present difficulty in many cases. Deci *45 sion of which act of two parties caused the injury must not depend upon mere conjecture. In all cases it can be determined upon reasonable probable grounds.
Trial courts submit disputed facts, and those concerning which rational minds may disagree, to the jury with appropriate instructions as to the law applicable to the different views of claims, so as to enable the jury to find the facts.
If rational minds may reasonably differ in determining the proximate cause, or if the ultimate fact may be definitely deduced from conflicting evidence, then it should not be decided by the court upon demurrer to the petition or upon motion for non-suit.
If it clearly appears upon demurrer to a petition from the admitted facts that the party committing the primary act of neglect could not in the light of all the circumstances have reasonably anticipated or foreseen the intervening act, then the court may apply the law to the rational and reasonable conclusion and decide accordingly.
Burket, J., in Railway v. Murray, 53 O. S., 570, 585, stated:
“If the evidence tends to prove that such negligence was the direct or proximate cause of the injury, it is for the jury; if the evidence does not so tend, a verdict should be. directed for the defendant. Whether or not the evidence so tends is a question of law for the court, and not of fact for the jury.”
Under pressure of hurried disposition of eases, correct conception of the rule of proximate cause and its appropriate application is not always fully conceived.
Proximate cause is not nearest in point of time, and the designation of the legally producing cause as the direct or immediate cause may clearly and appropriately express the legal liability, if we keep in mind that the first act of neglect or omission may in the light of all the facts be the direct and immediate cause.
Of course two distinct acts of two persons must concur. And in point of time the second act is nearest, and ordinarily may seem more nearly direct and immediate. But the first act remote in point of time, still concurring at the time of injury *46 with the second act, may clearly and distinctly appear as the direct', immediate and efficient cause of injury.
Stochberger v. Ames Shovel & Tool Co., 21 C.C.(N.S.), 424, is a well considered and instructive decision in some respects. Without going into detail, it is apparent that the obstruction of the roadway by piles of logs on each side produced a continuing condition which “directly and immediately” at the time of injury prevented the driver of the team ahead of the runaway team from turning out in order to avoid collision with the team and wagon in front. The injury clearly resulted as a natural and probable sequence of piling the logs on each side of the roadway, thereby preventing free use of the whole road. The person piling the logs on each side of the road must be held to have reasonably anticipated such an occurrence as the runaway team and conflict with another vehicle, and inability to avoid injury.
The benefit to be derived from the cáse, however, is the criticism of language often used in charges to the jury, defining,
“proximate cause as the direct and natural, the direct and producing cause, without the existence of which such- injury woxild not have occurred.”
There is evidence of failure to appreciate the meaning and application of the expression of “direct and immediate cause of injury."
The court of appeals considered that:
“The proximate cause-of the injury is not necessarily the cause which directly produced the injury, that is, the running away of the team, but it is that cause which from all the facts proved, an ordinarily careful and prudent person would say probably led to the final event as a natural sequence.”
The court quotes and comments upon the opinion in Meyer v. Ry. & Lt. Co., 116 Wis., 336. The Wisconsin court condemned the expression of the “direct and producing cause,” etc., as incorrect, and scolded trial courts for not giving -correct instructions of “this somewhat metaphysical conception of proximate cause” in view of all that court had said on the subject, adding:
*47 “It is not essential that the negligence should be the direct cause of the injury. It suffices that it is the natural and probable cause when it acts directly in producing the injury, or set in motion other causes so producing it and forming a continuous chain in natural sequence down to the injury; thus linking the negligence with the injury by a chain of natural and consequential causation, although the former may be neither the immediate nor direct cause of the event. But such causation can not be proximate cause in law, unless an ordinarily prudent and intelligent person ought, in the exercise of such intelligence, to have foreseen that an injury might probably result from the negligence under the circumstances. ’ ’
The direct and immediate cause of injury must be regarded as the legal cause of injury, whether it be found that the original act or omission, or the intervening cause, be the producing cause.
A circuit court decision appears in the reports expressly approving the use of “direct and proximate cause,” viz., Railway v. Rippon, 8 C.C.(N.S.), 334. The rule there stated was:
“A negligent act or omission to act becomes direct and proximate in relation to a claimed event, when the event is the natural and probable result of such negligent act or omission, and one which in the light of the circumstances would have been foreseen as likely to occur.”
In Lang v. Railway, 7 C.C. (N.S.), 405, the charge above quoted was approved.
It seems reasonable to conclude that the adoption by the court of appeals of this county of the criticism of the Wisconsin court’s criticism of the expression “direct and natural,” “direct and producing cause” in order to draw the distinction in Stockberger v. Ames Shovel & Tool Co., supra, was hardly justified or necessary. See common type of instruction given by capable men, Ohio Instructions to Jury, Sections 2106, 2107.
Coming to direct consideration of the demurrer, there are further rules to be applied.
To be a proximate cause of an injury, it is not essential that the one guilty of the first neglect must have anticipated the precise result. He is bound to anticipate the ordinary and prob *48 able results, not extraordinary events, not unusual or unprecedented results. Railway v. Rippon, 7 C.C.(N.S.), 334.
When defendant leased the premises' to the father of plaintiff with the barn doors in defective condition, he must be held to have anticipated such natural and probable events as might reasonably occur in the ordinary use of the barn and the doors. In the ordinary use of the barn the doors could only be opened in the manner alleged in the petition. Farmers ordinarily have children and calves. It would seem that there would ordinarily be occasion to tie a calf temporarily to a ring fastened in some part of the barn. Especially does this seem probable in view of the fact appearing in the petition that the doors out of repair led into the cow stable, where cows and calves may be kept. It is not extraordinary that a calf should cut up ealfish pranks and become entangled in the rope holding it; nor is it unprecedented that a seven-year-old farmer’s boy should be around the barn where a calf is tied and endeavor to release it from its entanglement with a rope with which it may be tied; And if it was naturally probable that an animal so tied would cause the barn doors in such defective condition to fall upon a boy in proximity thereto, that it may well be considered as a natural and probable result of failure to repair the barn doors.
Defendant was bound to anticipate that natural and probable uses of the barn might reasonably cause the doors to fall, and especially to injure a young boy unable to guard against injury as older person would be.
The demurrer to the petition is overruled. Leave is granted to answer within rule.